*Exhibit A*

# AFFIDAVIT OF ROBERT P. WATSON

## The Electoral College:
### A Primer on its Creation, Design, and Intent to Permit Electors to "Vote their Conscience"

Name: Robert P. Watson
Occupation: Professor, historian, author, media commentator

I, Robert P. Watson, do swear or affirm:

1. That I am a college professor at Lynn University, historian, author, and media commentator.

2. That I have studied, lectured, and written about the history of presidential campaigns, the Electoral College, the Constitution, and office of the presidency.

3. That the Electoral College was not designed to serve as a rubber stamp or direct reflection of the popular vote in a state, but rather it was the intent of the Framers to both permit and even require electors to vote their conscience and to use their best intelligence and sagacity in voting for president.

4. That the Electoral College was, by its very design, a compromise and a temporary solution to a variety of problems. It was developed chiefly to establish a safeguard against the public directly selecting the president. Whether we now agree with this approach, worry that it might not reflect our contemporary views of voting rights, or feel the time has come to change the system, the fact remains that it is how the system was created and it was the clear intention of the Framers. Quite simply, the Framers worried about the ability of the public to make an informed, dispassionate decision, just as they worried that a tyrant could manipulate public opinion in a direct election and rise to power. The safeguard they developed was the Electoral College. In so doing, the Framers placed their faith in the electors, a group that met only once and would therefore be less susceptible to political influence. It was, maintained the majority of the Framers, the best way to select a president.

5. That this point is widely agreed upon by historians and is stated by the Framers in both their notes from the Constitution Convention of 1787 and in the Federalist Papers. For instance, one of the chief architects of the Constitution and driving forces in Philadelphia, Alexander Hamilton, wrote in the Federalist Papers (Federalist 68):

> *"It was equally desirable, that the immediate election should be made by men most capable of analyzing the qualities adapted to the station, and acting under circumstances favorable to deliberation, and to a judicious combination of all the reasons and inducements which were proper to govern their choice. A small number of persons, selected by their fellow-citizens from the general mass, will be most likely to possess the information and discernment requisite to such complicated investigations. It was also peculiarly desirable to afford as little*

> *opportunity as possible to tumult and disorder. This evil was not least to be dreaded in the election of a magistrate, who was to have so important an agency in the administration of the government as the President of the United States. But the precautions which have been so happily concerted in the system under consideration, promise an effectual security against this mischief."*

6. That, secondarily, it was created in order to allay concerns of smaller states that they would have little power in selecting a president. Interestingly, today the system may be said in at least one way to favor small states and provides a precedent against the "one man, one vote" principle. For instance, the smallest state in the nation – Wyoming – might cast slightly over 200,000 votes in a presidential election and receive 3 electoral votes as a state. Whereas, California might cast well over 9 million votes and receive 54 electoral votes. This means each elector in Wyoming represents roughly 70,000 votes, but the electors in California represent fully 170,000 or so voters. The system was not designed to be a "one person, one vote" system and has, in practice, provided disproportionate powers to the electors of certain states.

7. That, between this second compromise and the fact that nearly all the states cast their electoral votes in a winner-take-all system (except Maine and Nebraska), it makes no difference if one wins a state by one vote or 1 million votes and the votes are neither reflective of the popular vote nor proportional to the voting in the states.

8. That, thirdly, American democracy was an experiment in popular governance. The Framers were going far beyond what the great Greek political philosophers had pondered or the Roman Senate had debated. It was of practical necessity. With much of the public being illiterate, limited by primitive communication and transportation systems, and little to no means of facilitating or counting a popular vote in such a large country (and today such a populous nation), how would they conduct an election and be sure of the results? The answer was to convene the Electoral College.

9. That there are plenty of examples historically of electors in the Electoral College voting their conscience rather than in a manner reflective of how the states voted. These instances were permitted within the system and not deemed to be unconstitutional. Likewise, there are several instance in American history where contentious elections were decided in ways other than the electors simply mirroring the votes of the states. In each case, the results of the election were upheld. And it started in the beginning.

The election of 1800 was a 73-73 tie in the Electoral College, necessitating a revote by the House of Representatives, who, on the thirty-sixth ballot selected Thomas Jefferson over Aaron Burr. Two decades later, the election of 1824 produced a popular vote victory by Andrew Jackson, but the electors met in state capitals soon thereafter and selected John Quincy Adams. The year 1876 produced an intriguing scenario. Samuel Tilden was in the lead but three states had yet to cast their electoral votes. Tilden's opponent, Rutherford B. Hayes, needed those states to vote for him in order to win the presidency… and they did, with electors in three southern states (one of them being Florida) determining the outcome of the election. The elections of 1888 and 2000 produced presidents who lost the popular vote – Benjamin Harrison over Grover Cleveland and George W. Bush over Al Gore, respectively.

Here is a partial list of Electors who voted in a way that did not reflect the vote of their home states:

1808 – 6 Democratic-Republican electors
1812 – 3 Federalist electors
1828 – 7 Democratic electors
1832 – 32 Democratic electors
1836 – 23 Democratic electors
1872 – 63 Democratic electors
1896 – 4 third party electors
1912 – 8 Republican electors

In the year, 1836, the slate of electors from Virginia decided to switch their entire vote. There were also instances where electors cast (or did cast) a vote in protest over the election. One such instances was in 2000, when Democrat Barbara Lett-Simmons of DC refused to vote. A similar situation occurred in 1832.

There are some recent examples. In 1968, a Republican from North Carolina, Lloyd Bailey, did not vote for his party's nominee, Richard Nixon. Rather, he chose George Wallace, who was the the Independence Party nominee. Similarly, during the 1976 vote, Mike Padden, a Republican from Washington, decided to write in Ronald Reagan even though he was not on the ticket and Padden was supposed to be pledged to vote for the Republican nominee that year, Gerald Ford. In 1956, W. F. Turner, a Democrat from Alabama, voted for a local circuit court judge from his hometown rather than for the party's nominee (Adlai Stevenson). In 1988, Margaret Leach, a West Virginia Democratic elector, reversed her vote for the Democratic ticket, picking Lloyd Bensten for president and Michael Dukakis for vice president. The final one being in 2004, when an anonymous Democrat from Minnesota cast a vote for John Edwards rather than for the presidential nominee John Kerry.

10. That all these instances were legal and within both the intent of the Framers and rights of the electors. Even though 29 states and DC attempt to require electors to vote the way the states voted in the popular vote, 21 states do not impose such restrictions. Moreover, it is uncertain as to whether such prohibitions on the electors would withstand a legal challenge today. [There was a case that upheld the prohibitions, but only in the narrow sense of small fines be placed on the "faithless" electors by the states, but it did not impeded electors from voting their conscience. See Ray v. Blair, 343 U.S. 214 (1952)] The Framers were clear in the design of the Electoral College. Electors can vote for someone from another party, against someone for whom their state pledges them to vote, or however they desire to vote.

If the matter was put before a court of law, there is an abundance of evidence in the form of notes and documents from the Founding that point to the clear intent of the Framers to have Electors vote their conscience. Using a popular sports metaphor, the Electors are free agents, able to vote in a way that, while it considers the vote of the public they reflect, is not tied in any way to the vote in their state.

3

Sources for further consideration:

"The Electoral College," Federal Election Commission
http://www.fec.gov/pdf/eleccoll.pdf

"The Electoral College," National Archives and Records Administration
https://www.archives.gov/federal-register/electoral-college/about.html

"Faithless Electors," Fair Vote
http://www.fairvote.org/faithless_electors

Robert P. Watson, Ph.D. is Professor of American Studies at Lynn University in Florida. He has published 40 books and hundreds of scholarly articles, chapters, and essays on topics in American politics and history, is a frequent political commentator for numerous media outlets in Florida, throughout the United States, and internationally, has lectured as a visiting scholar at numerous universities and historic sites including Yale, the U.S. Military Academy at West Point, the Harry Truman Presidential Library, Gerald Ford Presidential Museum, and the National Archives, and has served on the boards of numerous scholarly journals and academic associations.

I swear or affirm that the above and foregoing facts and conclusions are true and correct to the best of my information and knowledge.

_Dec 13, 2016_          _RPWats_
Date                              Robert P. Watson

State of Florida
Palm Beach County

I, the undersigned Notary Public, do hereby affirm that Robert P. Watson personally appeared before me on the _____ day of December 2016, and signed the above Affidavit as his free and voluntary act and deed.

_Deborah Jean Berg_
Notary Public

Deborah Jean Berg
Commission # FF934280
Expires: November 5, 2019
Bonded thru Aaron Notary

4